## THE MARY (Official No. 230418).

### Misc. Civ. No. 4626.

District Court, D. Massachusetts.

June 15, 1932.

Frederick H. Tarr, U. S. Atty., and Ellen L. Buckley, Asst. U. S. Atty., both of Boston, Mass.

Abbott & Carroll, of Boston, Mass., for claimant.

BREWSTER, District Judge.

This proceeding is brought for the forfeiture of the American gas screw Mary. The following grounds for forfeiture are alleged:

1. That the vessel was employed in a trade other than that for which she was licensed. Rev. St. § 4377, 46 USCA § 325.

2. That she neglected to carry lights, as required by the Act of June 9, 1910, § 1 (46 USCA § 511).

3. That she became liable to penalties imposed upon the vessel for unloading during the night merchandise from a foreign port without a special permit therefor issued by the collector. Tariff Act 1930, §§ 450 and 453, 19 USCA §§ 1450 and 1453.

4. That the master obstructed and hindered an officer of the United States in boarding the vessel. Tariff Act 1930, § 594, 19 USCA § 1594.

### Statement of Facts.

1. On the 4th day of November, 1931, federal prohibition agents received information that liquor was to be landed on the York river, near the town of York, in the state of Maine. These agents, in company with a local police officer and a deputy sheriff, proceeded to an estate on the banks of the river and waited until about midnight, when they heard sounds indicating that rowboats were coming from the river to the shore. They saw a motortruck without lights go to the point from which the sounds proceeded, and, soon after, the motortruck returned with a quantity of whisky of Canadian origin. The truck was stopped, and the vehicle and liquor seized. The party then proceeded along the river until they came upon a number of bags, piled up on the shore, which contained the same brand of whisky. They also discovered in a cove two dories in which were sacks of whisky. Other sacks were found in the water near by. The agents were equipped with a portable searchlight or beamlight that enabled them to see a vessel out in the river, and to recognize and identify some of those on board. They called out that they were federal prohibition agents and ordered that the boat be beached. The deputy sheriff fired a shot at the bow from a gun which he was carrying. The boat started, as if it were going to come toward them, and then suddenly turned and went out to sea. Other shots were fired, but without results. When the boat was coming in, and after it had turned its course, several of the witnesses were able to read the word Mary on

the boat. They saw, as the vessel was going out, some of those on board carrying bags resembling those found on the shore, and one of the prohibition agents followed along the bank for a while and later salvaged from the water a bag which contained the same brand of liquor as that on the truck and on the shore. In all, the federal agent and his assistants seized 567 sacks of liquor which they found on the truck, on the shore, in dories, and in the water.

2. On the early morning of November 5, Coast Guard cutter No. 2335 was patrolling the entrance to the Merrimac river. About 2:15 o'clock a. m. the officer in charge of the cutter received orders from the Merrimac Coast Guard station to intercept and hold the Mary, and later he received the same instructions from the Salisbury Beach station. Both stations had been advised that the Mary had landed liquor in York river and had escaped. It was upon this information that the orders were given to the Coast Guard cutter No. 2335 to stop the Mary.

About 3 o'clock a. m. the cutter sighted the Mary entering the Merrimac river, within the district of Massachusetts. She came from the direction of Thatcher's Light, and about half an hour later she was boarded and the next morning taken to Boston together with those on board, and upon arrival at Boston the customs officers formally seized the vessel and arrested the men who were found on her. The officers boarding this vessel recognized those on board as the same men who were seen on the Mary when it was in York river. The prohibition agents who had seen the Mary in the York river saw the vessel after it had been seized and positively identified the Mary as the boat that had brought the liquor into York river on the night of November 4.

3. When the Mary was first boarded by the men from the picket boat No. 2335, as some of the men testified, there were odors of alcohol; others were unable to say whether the odor was that of alcohol or not. They all agreed that one of the engines on the boat was not running; that it was said to be disabled, and although the engine was not cold, its temperature would indicate that it had not been run for some little time. How long it had been disabled, the witnesses were not able to accurately state. There was no fishing tackle and there were no dories on the Mary when she was intercepted.

4. One of the contentions of the claimant is that the identity of the boat has not been sufficiently established, but I find that the boat intercepted in the Merrimac river was the American gas screw Mary and was the same vessel that brought into the York river the liquor found on the truck, on the shore, and in the river.

5. The Mary is a wooden vessel, 38 feet long, 13.5 feet beam, 5.7 feet deep, with one deck, no mast, and bore the official number 230418. The vessel was licensed for the cod and mackerel fisheries.

6. The liquor brought into York on the night of November 4, 1931, was of foreign origin, and its value exceeded $500.

7. On the night of November 4, 1931, as the Mary proceeded in and out of the York river, she carried no lights of any kind.

### Conclusions of Law.

The claimant contends that the court is without jurisdiction to entertain the libel because any offense shown to have been committed was committed outside of the jurisdiction of Massachusetts. This contention cannot be supported for several reasons.

First, the failure to carry lights, as required by the Act of June 9, 1910, § 2, which applied to the Mary (46 USCA § 512), involved a penalty for which the vessel would be liable, and section 7 of the act (46 USCA § 517) expressly provides that the offending vessel may be seized and proceeded against in the District Court of the United States for any district in which the vessel may be found.

Again, the vessel, when overtaken by the Coast Guard picket boat, was returning from a trip into York Harbor, where she had unloaded sacks of liquor, and could be found to be then carrying on a trade other than that for which she was licensed. The Esther M. Rendle (C. C. A.) 13 F.(2d) 839. In fact, inasmuch as the seizure was made within the territorial waters of Massachusetts, this is the only court which could take jurisdiction in forfeiture proceedings. The Rosemary (D. C.) 23 F.(2d) 103.

Finally, the vessel had become liable to seizure by virtue of a law respecting the revenue, and it was the duty of the customs officers to seize and secure it as well without, as within, their respective districts. Rev. St. § 3072, 19 USCA § 506.

It is now well settled that when a vessel has violated the tariff laws and thereby become subject to forfeiture, the vessel can be seized anywhere, even upon the high seas. Maul v. United States, 274 U. S. 501, 47 S. Ct. 735, 71 L. Ed. 1171.

Upon the facts of the case, there is no doubt in my mind that when the officers of the Coast Guard picket boat boarded the vessel at Boston, they had probable cause to believe that the vessel had become liable to seizure for violation of federal laws.

It is further urged by the claimant that, at the time the Mary was stopped, she was not then violating any statute and that the boat could not be stopped and detained for an offense previously committed, citing The Evelyn Ruth (D. C.) 42 F.(2d) 458. The complete answer to this argument is that the proceedings, under which forfeiture of the Mary is sought, are not proceedings under Rev. St. § 3062 (19 USCA § 483) for the forfeiture of a vehicle searched and seized under the provisions of Rev. St. § 3061 (19 USCA § 481). The distinction between proceedings under these sections and under Rev. St. § 4377 (46 USCA § 325), invoked in the case at bar, is clearly pointed out in United States v. Blackwood (C. C. A.) 47 F.(2d) 849.

A decree of forfeiture may be entered in these proceedings.